## ELYRIA NAT. RUBBER HEEL CO. v. I. T. S. RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit. March 2, 1920.)

### No. 3297.

1. PATENTS ⬥328—FOR RUBBER HEEL NOT INFRINGED.

   The Tufford reissue patent, No. 14,049, for a rubber heel, *held* not infringed on review of an order granting a preliminary injunction.

2. PATENTS ⬥165—LIMITATION AS TO FORM OF DEVICE CONCLUDES PATENTEE.

   Where a patentee, for some supposed advantage, has limited the form of his device, he cannot, for the purpose of establishing infringement, insist that the limitation is immaterial.

3. PATENTS ⬥259—CONTRIBUTORY INFRINGEMENT NOT MADE OUT BECAUSE DEFENDANT'S DEVICE MAY BY WEAR BECOME IDENTICAL.

   A charge of contributory infringement cannot be sustained because, while defendant's device, as made and sold, differs materially in form from that of the patent, it may, as the result of wear, become identical.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by the I. T. S. Rubber Company against the Elyria National Rubber Heel Company. From an order granting a preliminary injunction, defendant appeals. Reversed.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward Rector, of Chicago, Ill., for appellant.

F. O. Richey, of Elyria, Ohio, and Charles A. Brown, of Chicago, Ill., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The Elyria Company appeals from a preliminary injunction awarded against it for infringement of the Tufford reissue patent, No. 14,049, recently considered by us in two other cases. Fetzer Co. v. I. T. S. Co., 260 Fed. 939, —— C. C. A. ——; U. S. Rubber Co. v. I. T. S. Co., 260 Fed. 947, —— C. C. A. ——. A reference to those opinions will sufficiently disclose the general subject-matter involved.

[1] With one exception, the present record discloses nothing earlier by way of anticipation or limitation substantially more important than was shown by the former records. This exception is the so-called rand rubber heels. If the upper surface of these was of saucer shape as distinguished from scoop shape, as these terms are defined in our previous opinions—and this is claimed—and if they were in use as lifts rather than as whole heels before the date of Tufford's invention, it would at least follow that the Tufford patent must be limited, so as not to include the defendant's lifts in this case, or else it would also include the earlier art; but neither upon the claim that they were used as lifts, nor upon the theory that there could be no patentable difference between using them as whole heels and as lifts, are the present record and its inferences clear enough to justify disturbing a preliminary injunction, issued after so much litigation as had here occurred.

However, the question of infringement, as here presented, is distinctly different from that involved in either of the other cases. Tufford's lift was a heel-shaped section cut from the wall of a hollow rubber sphere, and all parts of its upper and lower surfaces were coincident in all directions with the arcs of the circles representing the inner and outer surfaces of the sphere wall. The substance, though not the exact form, of this structure was carried into the broadest claims by the phrase, "having its body portion concavo-convex on every line of cross-section," and the forms used by the defendants in the other two cases substantially responded to this limitation. This defendant uses a lift which we assume is concave on every line of cross-section on its upper surface, but which, on its lower surface, is plane. The result is that, while the Tufford lift is before attachment concave upon its upper surface and convex on its lower, and after attachment is plane upon both, the Elyria lift is before attachment concave upon its upper and plane upon the lower surface, and after attachment plane upon the upper and concave on the lower. It is therefore quite plain that the defendant's lift, before attachment and as it is put upon the market, does not literally respond to the terms of the claims and cannot be thought to infringe, unless this prima facie dissimilarity may be disregarded.

The first reason urged for so doing is that defendant's lift contains the whole Tufford structure and something more, and appeal is made to the familiar rule that the use of an addition to the patented combination does not avoid infringement. It is said that defendant simply

takes the convex lower surface of the Tufford lift, adds a horseshoe-shaped flange, tapering from its greatest thickness at the edge to nothing at the center, and thus transforming the convex surface into a plane one, but that the mind's eye may see the Tufford structure in spite of this addition. We cannot accept this theory; it is to say that a claim to a sphere would be infringed by a cube, because a cube includes a sphere, and more. That could not be thought, in any case where the invention had pertained to the spherical shape. The change would not be, and the change here is not, the addition of an independent and separable element. The change is an inherent one in the identity of the unitary body described in the claim. The body portion has ceased to be the thing described and has become something else.

[2] The history of the application shows that Tufford was deliberately and intelligently confining himself to the form which he had constructed, and which his application shows, and which was convex upon the bottom as well as concave on the top. At one time, a claim for a lift having a concave upper surface, without limitation as to the form of the lower surface, was presented and rejected. Possibly he was entitled to it; there is reason why his acceptance of the rejection is not an estoppel; but it shows that the idea of claiming an invention to be found only in the upper surface occurred to him and was abandoned; he deliberately included the convexity of the lower surface in his claims; and he cannot now say that it is immaterial. It is evident that the elastic action of the rubber will be somewhat different, when the lift is of the same thickness throughout, from what it will be when the edges are thick and the center is thin. The side edges will take different form and must be differently shaped or else will require different trimming. Still more important, the bottom of Tufford's lift is plane, when attached, and defendant's is concave. Whether these differences are important or not, Tufford thought they were, and either compulsorily or voluntarily limited himself to them. In neither case can he afterward disregard them. See cases cited in our opinion in Higgin Co. v. Watson, 263 Fed. 378, —— C. C. A. ——, filed February 3, 1920; also in D'Arcy Co. v. Marshall Co., 259 Fed. 236, and particularly conclusions on page 240, —— C. C. A. ——.

[3] The other reason urged rests upon the theory of contributory infringement. It is said that, even if defendant's lift does not respond to the claims when it is marketed and when it is attached to the heel, yet that the so-called added flange surrounding the lift, which makes the lower edge concave, wears off with use and the surface becomes plane, and that then there is complete identity of form between the patented lift and defendant's. We know of no case which carries the theory of contributory infringement so far, and we do not think it should be so extended. The patent relates to an article manufactured for sale in the patented form, and, normally, the monopoly is to be judged by the situation at the time of sale. If it is the first vendor's intention that the purchaser, before use, shall add something or subtract something whereby infringement will become manifest, the law antedates that change to the time of sale; but the principle cannot reach a

case where the infringing form is gradually developed by ordinary use. It would result, as applied to this subject-matter, that some lifts would come to infringe and some would not; some would be worn down all alike and become horizontal planes, others would be worn off only on one edge, and others would go upon seldom-worn shoes and never change their shape. There are too many contingencies and uncertainties to justify bringing such a situation within the rule of contributory infringement. It would lead us to say, for example, that the patent upon a rubber tire which was limited to one having a smooth surface, because of certain advantages to be found in such surface, would be infringed by the sale of a tire with a roughened or nonskid surface, because, if the tire were used enough, it would wear smooth. In Thomson Co. v. Ohio Co. (C. C. A. 6) 80 Fed. 712, 26 C. C. A. 107, an element was missing as the article was sold, but the purchaser was expected to apply it before use. In the Weed-Chain Cases (C. C.) 196 Fed. 213, 215, the article was sold accompanied by a device which, if used, would have prevented infringement, but the buyer could use this or not at his pleasure, and probably would not. See Macomber's Fixed Law of Patents, §§ 474–478.

For these reasons, the preliminary injunction should not have issued. The order, therefore, will be reversed, and the case remanded for such further proceedings as may be proper.