No. 34,667

E. M. FAIRCHILDS, *Appellee*, v. NINNESCAH OIL AND GAS COMPANY et al., *Defendants;* and J. W. BECK, F. E. HASTINGS, D. H. THOMPSON, H. ATKINS, ED HELMKE and FRED J. HELMKE, *Appellants*.

(99 P. 2d 839)

Opinion filed March 9, 1940.

*George Barrett* and *Robert G. Miller,* both of Pratt, for the appellants.

*W. B. Hess, Myron Steere,* both of Pratt, *J. N. Tincher* and *Clyde Raleigh,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a quiet-title suit. Plaintiff prevailed, and the defendants appealed.

Plaintiff's petition, in substance, alleged: He is the owner and in the possession of certain lands in Pratt county; certain defendants, including appellants, to wit, F. E. Hastings, J. W. Beck, Dwight H. Thompson, Herbert Atkins, Frederick J. Helmke and Howard H. Helmke, claim some right, title or interest in the land or some part thereof, which claims cloud plaintiff's title; their claims are without merit; plaintiff is entitled to have his title quieted and to have all claims and interests of the defendants forever barred.

The defendant, Hastings, filed a separate answer which, in substance, alleged: He did claim some right, title and interest in land; on May 21, 1932, James T. Hardesty and Dora Hardesty, his wife, being the then owners of the land, executed to him an oil and gas mining royalty conveyance, together with a contract, in writing, all of which were placed in escrow; on May 22, 1933, defendant had fully complied with the terms and provisions of the contract; the royalty conveyance in compliance with such performance was delivered to him by the escrow holder; he acquired thereunder an equal undivided one-fourth interest in the oil and gas and other minerals in and under the land or that might be produced therefrom, for a period of fifteen years; the Hardestys, at the time they executed and delivered the mineral deed, were the owners in fee of the land, subject only to a mortgage thereon, given by the Hardestys to The Wheeler-Kelly-Hagny Trust Company of Wichita, Kan., on March 8, 1920, in the sum of $12,000; the deed provided the Hardestys, their heirs and assigns, would forever defend the title to the royalty rights conveyed; defendant was entitled to be decreed to be the equitable and legal owner of an undivided one-quarter interest in and to all of the oil and gas and other minerals that may be produced from the land, save and except as to such fractional portions of his interest as may be shown by the public records of Pratt county to have been conveyed to others.

The remaining appellants filed their joint answer, in which they adopted the answer of the defendant, Hastings, and, in substance, further alleged: Assignments had been made by Hastings to them of various fractional portions of his interest after the royalty conveyance to Hastings had been placed on record; plaintiff was estopped from claiming the title asserted in his petition.

Plaintiff's reply to these answers consisted of a general denial of all matters which controverted the averments of his petition. The reply, however, contained an admission of the execution and delivery

of the contract and alleged royalty conveyance referred to in the answer of the defendant, Hastings.

The action was tried upon an agreed statement of facts, which reads:

"AGREED STATEMENT OF FACTS

"1. That on and prior to the 21st day of May, 1932, James P. Hardesty and J. E. Hardesty were the owners, as tenants in common, of the east half of section 28; the east half of the west half of section 28; the northeast quarter of section 33; the east half of the west half of section 33, all in township 27 south, of range 11 west of the 6th P. M., in Pratt county, Kansas, containing 800 acres, more or less.

"2. That on the 21st day of May, 1932, James P. Hardesty and Dora Hardesty, his wife, and J. E. Hardesty and Alma L. Hardesty, his wife, entered into an agreement in writing of that day, with one F. E. Hastings. A copy of said agreement is hereto attached, marked 'Exhibit A,' and made a part of this agreed statement of facts.

"3. That of even date therewith, James P. Hardesty and Dora Hardesty, his wife, and J. E. Hardesty and Alma L. Hardesty, his wife, in compliance with the terms of said escrow agreement, made and executed their royalty conveyance in writing of that day, to F. E. Hastings. A copy of said royalty conveyance, with all endorsements thereon, is hereto attached, marked 'Exhibit B,' and made a part of this agreed statement of facts.

"4. That on and prior to the 21st day of May, 1932, the above-described real property, together with 480 acres of land lying adjacent thereto, was covered by a mortgage executed by the said James P. Hardesty and Dora Hardesty, his wife, to The Wheeler-Kelly-Hagny Trust Company, as the date of March 8, 1928, in the principal sum of $12,000, which mortgage was recorded in the office of the register of deeds of Pratt county, Kansas, on the 29th day of March, 1928, in Book 70 at page 286 of the mortgage records of said office. Said record is made a part of this agreed statement of facts as if written herein in full.

"5. That on the 22d day of May, 1933, the above-described royalty conveyance and assignment was delivered by the Peoples Bank, Pratt, Kan., in compliance with said escrow agreement, to F. E. Hastings, and on that date he became the owner and holder thereof.

"6. That thereafter the said F. E. Hastings conveyed away, and by subsequent assignment the defendants hereinafter named became the holders of, an undivided interest in and to the oil and gas rights in the above-described real property as fixed and determined by the royalty agreement hereto attached, marked 'Exhibit B'; the exact interest therein is not determined by this agreed statement of facts; J. W. Beck, Ed & Fred H. Helmke, D. H. Thompson, Farmer Bros., H. Atkins, Margaret Gay, F. E. Hastings, Lee Harris. That all the defendants herein, or their prior assignors, were parties defendant in the case referred to in paragraph No. 7 following.

"7. That on the 3d day of July, 1933, case No. 5768, wherein National Fire Insurance Company of Hartford, Conn., was plaintiff, and James P. Hardesty et al. were defendants, was filed in the district court of Pratt county, Kansas.

The petition and the files in said action are hereby referred to and made a part of this agreed statement of facts to the same extent as if all of said instruments were incorporated herein in full.

"8. That on the 18th day of December, 1936, J. E. Hardesty and Alma L. Hardesty, his wife, and James P. Hardesty and Dora Hardesty, his wife, executed and delivered their deed in writing of that day, conveying the above-described real property, together with 480 acres lying adjacent thereto, to Briant Hardesty, which deed was recorded in the office of the register of deeds of Pratt county, Kansas, on the 30th day of December, 1936, in vol. 66, at page 238 of the deed records of said office. Said record is made a part of this agreed statement of facts to the same extent as if written herein in full.

"9. That on the 13th day of January, 1937, redemption from the foreclosure sale had in connection with case No. 5768 above referred to, was made of the above-described real property by Briant Hardesty.

"10. That on the 7th day of January, 1937, the said Briant Hardesty made, executed and delivered to Business Men's Assurance Company of America, Kansas City, Mo., his mortgage deed in writing, in the principal sum of $12,800, covering the above-described real property, together with 480 acres of land lying adjacent thereto. Said mortgage was made a matter of record in the office of the register of deeds of Pratt county, Kansas, on the 9th day of January, 1937, in vol. 79, at page 463 of the mortgage records of said office, and said record is made a part hereof to the same extent as if written herein in full.

"11. That the money so received from said mortgage was used by the said Briant Hardesty, in part, for the redemption of the above-described lands and other lands.

"12. That on the 30th day of December, 1936, the said Briant Hardesty made, executed and delivered his deed in writing of that day, whereby the above-described lands, together with 480 acres of other lands, were conveyed and set over to the plaintiff, E. M. Fairchilds. Said deed was recorded in the office of the register of deeds of Pratt county, Kansas, in vol. 66 at page 424 of the deed records of said office, which record is referred to and made a part of this agreed statement of facts."

The agreement between the Hardestys and the appellant, Hastings, referred to as "Exhibit A" in paragraph 2 of the agreed statement of facts, provided that Hastings was to receive from the escrow holder the oil and gas royalty conveyance, marked "Exhibit B," when Hastings or his assignees had performed the drilling services on that portion of the oil and gas lease held by the Ninnescah Oil and Gas Company. Exhibit B was the royalty conveyance from the Hardestys to Hastings. That conveyance recited there was, on the date of the execution of the royalty conveyance, a recorded oil and gas lease on the land and a prior mortgage on the land in the sum of $12,000. Exhibit B further disclosed that the Hardestys, under the terms of the oil and gas lease, had reserved unto themselves and were to receive from the lessee one-eighth of all oil produced and saved

from the land and one-eighth of the proceeds from all gas from the land used off the premises. Exhibit B also contained a further provision which expressly defined the particular interest which the grantors of the oil and gas lease, the Hardestys, had reserved unto themselves under the lease. That was the one-eighth interest in the oil and gas produced. That interest is what the Hardestys and Hastings agreed should constitute "royalty" within the meaning of exhibit B. The provision is clear and unambiguous. It reads:

"It is expressly agreed and understood in this conveyance, that all oil and gas reserved, or any money received for oil or gas by said grantor, heirs or assigns, under said present lease, or under any other lease or leases on said land, shall be called royalty."

Other portions of exhibit B further clearly provided that Hastings was to receive one-fourth of "said royalty rights reserved to the said grantor under the lease," or under any other lease or leases which might thereafter be granted by the Hardestys, their heirs or assigns. Exhibit B also provided:

*"Provided, however,* That upon the expiration or forfeiture of the present existing lease, the said grantor, heirs or assigns, shall have the right to lease said land for oil or gas and receive all the bonus and rentals paid by lessee, and if no oil or gas well be drilled on said land under the present lease, said grantor, heirs or assigns, agree to make a second lease, insuring development of said land for oil and gas within one year after the expiration or forfeiture of said present lease, and if grantor, heirs or assigns, are unable to make such a lease with a responsible company within six months after the expiration or forfeiture of said present lease, said grantee, heirs or assigns, shall have the right to secure such a lease on said land.

"If no oil or gas is found or produced on said land, this agreement shall remain in force for a term of fifteen years from the date first above written. But if oil and gas or either of them is found or produced on said land, this agreement shall continue and the royalty rights of grantee shall continue so long and whenever oil or gas is produced from said land."

In exhibit B the Hardestys covenanted and agreed they were the owners in fee of the land and royalty rights conveyed to Hastings and that the same were free, clear and unencumbered except as to the $12,000 mortgage on the land previously executed in the year 1920.

The journal entry of mortgage foreclosure discloses the court found James P. Hardesty and Dora Hardesty, his wife, were, at the time the note and mortgage were executed and delivered and on the date of the foreclosure judgment, September 11, 1933, the owners of the land. The judgment expressly provided that appellants, and

anyone claiming under them, were barred, restrained and enjoined from having or asserting any right, title, estate or claim, in or to, or lien upon the property, subject only to the right of redemption as provided by law.

In the instant quiet-title action the trial court concluded plaintiff was in the actual possession of and the owner of the fee-simple title, free from any and all claims of the appellants.

Appellants contend the judgment quieting appellee's title to the land is erroneous; first, because the judgment in the mortgage-foreclosure action did not determine the Hardesty's ownership of the land; second, appellants were cotenants in the ownership of the land and the oil and gas that might be produced; and third, appellants were not required to contribute to the cost of redemption.

Touching the first contention, appellants insist the finding in the journal entry of foreclosure that the Hardestys were the owners of the land on the date the mortgage was executed and on the date of the foreclosure judgment was contained only in the fact-finding portion of the journal entry of judgment, and hence does not bar appellants from asserting their claim or title in the instant action. The contention cannot be sustained. It is true that ordinarily a mere finding of fact not included in or confirmed by a judgment does not constitute an adjudication of the finding. (*McCullough v. McCullough*, 109 Kan. 497, 500, 200 Pac. 298; *Johnston v. Wear*, 110 Kan. 237, 204 Pac. 141.) Where, however, findings are necessarily included in and become a part of the judgment, they are deemed adjudicated. (*Auld v. Smith*, 23 Kan. 65; *Johnston v. Wear*, supra, p. 243.) In the foreclosure judgment, the court did not make merely a finding that the Hardestys were the owners of the fee title when they executed the mortgage and that they were the owners at the time of the foreclosure judgment, but the trial court specifically rendered a judgment against each and all of these appellants which forever barred them from asserting any further claim in or to the land or any part thereof, subject only to the right to redeem as provided by law. That judgment was rendered September 11, 1933. No appeal was taken therefrom and it has become a finality. It is a common practice in mortgage-foreclosure actions for courts to first find whether the mortgage in question was in fact executed and whether the mortgagor was and is the owner of the land and whether the mortgagee was and is the holder of the mortgage. Those findings are essential to and form the basis of the

foreclosure judgment. Furthermore, the appellant, Hastings, is in no position to deny the title of his grantors. If the grantors, the Hardestys, were not the owners of the land, then Hastings and the other appellants received no title or interest of any kind or nature whatsoever. They also expressly took their conveyances subject to the existing mortgage on the land of the Hardestys. The foreclosure judgment wiped out not only the oil and gas lease itself, but every semblance of appellants' rights or claims save and except their right, if any, to redeem. Appellants stoutly contend they had the right to redeem under authority of *Rutland Savings Bank v. Norman,* 125 Kan. 797, 266 Pac. 98. It will be well to bear in mind that while the opinion in that case does not clearly indicate the nature of the oil and gas conveyance, the abstract here on file clearly discloses the conveyance in that case constituted an outright mineral deed to all of the oil and gas in place. No such grant was contained in the instant conveyance to Hastings. The express agreement and understanding as disclosed by exhibit B disposes of appellants' second contention, at least insofar as cotenancy in and to minerals in place is concerned.

In view of what has been said, it follows appellants were not and did not become cotenants with the Hardestys insofar as an interest in the land was concerned. We are not required in the instant case to determine, as a matter of law, whether appellants might have become cotenants as to the oil and gas which "may be produced." Assuming, without deciding, that such a cotenancy might exist and that as such cotenants appellants would be entitled to redeem, it would be necessary that they redeem, or offer to contribute toward redemption, within a reasonable time. (*Hayden v. Hughes,* 147 Kan. 511, 77 P. 2d 938; *Malone v. Young,* 148 Kan. 250, 81 P. 2d 23.) Such offer to redeem was quite promptly made in the Rutland Savings Bank case, *supra.* In the instant case redemption was made by the grantee of the Hardestys on January 13, 1937. The new mortgage which was placed on the land in order to make redemption possible was in the sum of $12,800. That was $800 more than the principal amount of the old mortgage. Appellants did not offer to redeem or to contribute to the cost of redemption prior to redemption. Nor have they offered to do equity at any time since redemption was made. The instant action by appellee to quiet his title was not commenced until February 23, 1939. The answers of the respective appellants assert only

their alleged rights which had their source in the royalty conveyance to Hastings. Those rights were subject to the prior existing real-estate mortgage. Appellants, under the royalty conveyance, had the right to redeem the property from the mortgage debt. They failed to contribute in any manner to avoid the foreclosure of their interests, and they have completely failed to contribute to the payment of costs and expenses incident to redemption. They are now in the position of seeking for themselves all the benefits of redemption without having shared, or offering to share, in any of its burdens. The position is untenable.

We have not overlooked appellee's motion to dismiss the appeal. The motion is too technical. The trial court did not err in quieting the title of appellee, and the judgment is affirmed.